**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| **THE ESTATE OF ISAIAH TRAMMELL**<br>By Administrator William M. Harrelson II,<br><br>Plaintiff,<br><br>v.<br><br>**MONTGOMERY COUNTY, et al.,**<br><br>Defendants. | **Case No. 3:25-CV-00086-MJN-CHG**<br><br>Judge Michael J. Newman<br><br>Magistrate Judge Caroline H. Gentry |

**NAPHCARE, INC., BRITTANIE HOLZFASTER, CASSIE KIRKPATRICK SMITH,
AND PATRICK REDMAN'S MOTION TO DISMISS
<u>PLAINTIFF'S FIRST AMENDED COMPLAINT</u>**

Pursuant to Federal Rule of Civil Procedure 12, Defendants NaphCare, Inc. ("NaphCare"), Brittanie Holzfaster ("Holzfaster"), Cassie Kirkpatrick Smith ("Smith"), and Patrick Redman ("Redman") (collectively referred to herein as the "NaphCare Defendants"), file this Motion to Dismiss for Failure to State a Claim ("Motion") and request that the Court dismiss Plaintiff's First Amended Complaint [Doc. 7] as related to the NaphCare Defendants. The NaphCare Defendants specifically request that this Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), dismiss Counts One, Three, Five, Six and Seven. In support of this Motion, the NaphCare Defendants rely upon the accompanying Memorandum in Support of their Motion to Dismiss.

Respectfully submitted this 15th day of July, 2025.

*\* SIGNATURES ON FOLLOWING PAGE*

*/s/ Erika Dackin Prouty*
Erika Dackin Prouty (0095821)
*Trial Attorney*
**BAKER & HOSTETLER LLP**
200 Civic Center Drive, Suite 1200
Columbus, Ohio 43215
Telephone: 614.462.4710
Facsimile: 614.462.2616
Email: eprouty@bakerlaw.com

Gregory C. Ulmer
*Admitted pro hac vice*
Texas Bar No. 00794767
gulmer@bakerlaw.com
Julia Bennett-Jean
*Pro hac vice application forthcoming*
Texas Bar No. 24106642
Email: jbennettjean@bakerlaw.com

811 Main Street
Suite 1100
Houston, TX 77002-6111
Telephone: 713.751.1600
Facsimile: 713.751.1717

Jarvarus A. Gresham
Georgia Bar No. 873933
*Admitted pro hac vice*
jgresham@bakerlaw.com

1170 Peachtree Street, NE
Suite 2400
Atlanta, GA 30309-7676
Telephone: 404.946.9791
Facsimile: 404.459.5734

*Attorneys for Defendants NaphCare, Inc.,
Brittanie Holzfaster, Cassie Kilpatrick Smith,
and Patrick Redman*

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| **THE ESTATE OF ISAIAH TRAMMELL** By Administrator William M. Harrelson II, | **Case No. 3:25-CV-00086-MJN-CHG** |
| Plaintiff, | Judge Michael J. Newman |
| v. | Magistrate Judge Caroline H. Gentry |
| **MONTGOMERY COUNTY, et al.,** | |
| Defendants. | |

**DEFENDANTS NAPHCARE, INC., BRITTANIE HOLZFASTER, CASSIE KIRKPATRICK SMITH, AND PATRICK REDMAN'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

## TABLE OF CONTENTS

I.    SUMMARY OF THE ARGUMENT ................................................................................1

II.   RELEVANT FACTS AND PROCEDURAL POSTURE ...................................................2

      A.    Trammell Hit His Head at 4:15 A.M. and Was Immediately Placed in a
          Restraint Chair and Monitored..................................................................................3

      B.    Trammell Runs at and Hits His Cell Door While Under Observation and Was
          Immediately Assisted and Taken to the Hospital .....................................................4

      C.    Plaintiff Filed This Lawsuit Asserting Baseless Allegations Against the
          NaphCare Defendants ...............................................................................................5

III. STANDARD OF REVIEW ..............................................................................................6

IV. DISMISSAL IS WARRANTED AS TO PLAINTIFF'S § 1983 CLAIMS AGAINST
     THE NAPHCARE INDIVIDUALS ..................................................................................6

      A.    Plaintiff's § 1983 Claims Against the NaphCare Individuals Must Be
          Dismissed Because Plaintiff Cannot Satisfy the Subjective Component of
          Deliberate Indifference ............................................................................................7

          1.    Redman Did Not Recklessly Disregard Trammell's Medical Needs as
               He Provided Him with Medical Care...........................................................8

          2.    Holzfaster and Smith Did Not Recklessly Disregard Trammell's
               Medical Needs as They Provided Him with Medical Care and
               Informed Officers in the Area of His Suicidal Ideations ...........................10

      B.    Plaintiff's § 1983 Supervisory Liability Claim Against Holzfaster Must Be
          Dismissed Because Plaintiff Cannot Satisfy a Single Element of the Claim ........12

V. DISMISSAL IS WARRANTED AS TO PLAINTIFF'S § 1983 *MONELL* CLAIMS
    AGAINST NAPHCARE ...............................................................................................13

      A.    Plaintiff's § 1983 *Monell* Claim for Deliberate Indifference Against
          NaphCare Must Be Dismissed Because Plaintiff Cannot Satisfy a Single
          Element of the Claim ..............................................................................................14

          1.    Plaintiff Has Not Adequately Alleged an Underlying Constitutional
               Violation. ...................................................................................................14

          2.    Plaintiff Has Not Adequately Alleged a NaphCare Policy or Custom. .....15

          3.    Plaintiff Fails to Allege Any NaphCare Policy or Custom Was the
               "Moving Force" Behind the Alleged Constitutional Injury to
               Trammel....................................................................................................17

B.       Plaintiff's § 1983 *Monell* Claim for Failure to Train Against NaphCare Must
Be Dismissed Because Plaintiff Cannot Satisfy a Single Element of the Claim ...18

VI. DISMISSAL IS WARRANTED AS TO PLAINTIFF'S STATE LAW CLAIMS
AGAINST THE NAPHCARE DEFENDANTS ................................................................19

VII. CONCLUSION ............................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................................................6, 8

*Baker v. City of Trenton*,
    936 F.3d 532 (6th Cir. 2019) ..............................................................................14

*Batton v. Sandusky Cnty., Ohio*,
    Case No. 3:21-cv-1771, 2023 WL 375206 (N.D. Ohio, Jan. 24, 2023) ............................7, 13

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...................................................................................................6

*Brawner v. Scott Cnty., Tenn.*,
    14 F.4th 585 (6th Cir. 2021) .............................................................................7

*Britt v. Hamilton Cnty.*,
    531 F. Supp. 3d 1309 (S.D. Ohio 2021) ....................................................... *passim*

*Broughton v. Premier Health Care Services, Inc.*,
    Case No. 1:12cv991, 2015 WL 5582134 (S.D. Ohio Sep. 23, 2015) .....................................13

*Campbell v. Riahi*,
    Case No. 1:20-cv-678, 2023 WL 5979211 (S.D. Ohio Sep. 13, 2023) ...............................14

*Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*,
    648 F.3d 365 (6th Cir. 2011) ..............................................................................6

*Farmer v. Brennan*,
    511 U.S. 825 (1994)...................................................................................................7

*Frost v. Evenflo Co., Inc.*,
    C.A. No. 2022-CA-29, 2023 WL 8670063 (2nd Dist. Dec. 15, 2023)....................................20

*Galloway v. Anuszkiewicz*,
    518 Fed. Appx. 330 (6th Cir. 2013)...................................................................11

*Garza v. Lansing Sch. Dist.*,
    972 F.3d 853 (6th Cir. 2020) ..............................................................................12

*Grabow v. Cnty. Of Macomb*,
    580 Fed. Appx. 300 (6th Cir. 2014).......................................................................8

*Gray v. City of Detroit,*
    399 F.3d 612 (6th Cir. 2005) ................................................................................1

*Gregory v. City of Louisville,*
    444 F.3d 725 (6th Cir. 2006) ........................................................................12, 16

*Jerauld v. Carl,*
    405 Fed. Appx. 970 (6th Cir. 2010) ....................................................................7

*Jordan v. Summit,*
    Case No. 5:17-cv-02047, 2018 WL 4335598 (N.D. Ohio, Sep. 11, 2018) ..............6, 9, 10

*Musson Theatrical, Inc. v. Fed. Express Corp.,*
    89 F.3d 1244 (6th Cir. 1996) ..............................................................................19

*North v. Cuyahoga Cnty.,*
    754 F. App'x 380 (6th Cir. 2018) ......................................................................14

*O'Hara v. Wigginton,*
    24 F.3d 823 (6th Cir. 1994) ..................................................................................8

*Peatross v. City of Memphis,*
    818 F.3d 233 (6th Cir. 2016) ..............................................................................12

*Pineda v. Hamilton Cnty.,Ohio,*
    977 F.3d 483 (6th Cir. 2020) ..............................................................................13

*Searcy v. City of Dayton,*
    38 F.3d 282 (6th Cir. 1994) ................................................................................17

*Shadrick v. Hopkins Cnty., Ky.,*
    805 F.3d 724 (6th Cir. 2015) ........................................................................14, 18

*Taylor v. Barkes,*
    575 U.S. 822 (2015)..............................................................................................6

*Wade v. Mancuso,*
    111 N.E.3d 575 (9th Dist. 2018)........................................................................19

*Winkler v. Madison Cnty.,*
    893 F.3d 877 (6th Cir. 2018) ..............................................................................18

**Statutes**

28 U.S.C. § 1367(c)(3)................................................................................................19

42 U.S.C. § 1983 .............................................................................................. *passim*

Ohio Code § 2125.01 ..............................................................................................5, 19

v

Ohio Code § 2305.21 ..........................................................................................................5

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ............................................................ *passim*

Defendants NaphCare, Inc. ("NaphCare"), Brittanie Holzfaster ("Holzfaster"), Cassie Kirkpatrick Smith ("Smith"), and Patrick Redman ("Redman") (collectively referred to herein as the "NaphCare Defendants") file this Memorandum in Support of their Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion").

## I.   SUMMARY OF THE ARGUMENT

"Suicide is a difficult event to predict and prevent and often occurs without warning." *Gray v. City of Detroit*, 399 F.3d 612, 616 (6th Cir. 2005). That is the case here. Over the course of nine hours, the NaphCare Defendants tried multiple methods to keep Isaiah Trammell ("Trammell") safe from himself. However, despite their best efforts, Trammell tragically ended his life by running head first into a metal door at full speed.

As Plaintiff notes in his First Amended Complaint ("Complaint"), from the moment Trammell entered the jail, Trammell was: (1) put on "high risk" suicide watch, (2) talked to by NaphCare employees, including Holzfaster, Smith, and Redman, to provide medical assessments and deescalate his worries, (3) put in a restraint chair by custody to keep him from injuring himself after he began hitting his head, (4) checked on repeatedly—over fifteen times, including by County officers who were close to his cell and who were observing him after being removed from the restraint chair, (5) checked by medical personnel immediately after attempting to commit suicide, and (6) sent to the hospital to address his medical emergency after a head injury became apparent. This is a far cry from deliberate indifference to Trammell's medical needs under §1983 and the 14th Amendment; yet these are the factual bases of Plaintiff's allegations. Based on these facts, Plaintiff further alleges wrongful death and survivorship claims against the NaphCare Defendants and a supervisory liability claim against Holzfaster.

As set forth more fully below, Plaintiff has not sufficiently stated a cognizable claim against and NaphCare or the NaphCare individuals such that this Motion should be granted.

Plaintiff has also brought claims against NaphCare based on four distinct, separate, and unrelated incidents that allegedly occurred at the Montgomery County Jail in 2023. Plaintiff's § 1983 *Monell* claim against NaphCare must be dismissed because 1) Plaintiff has not sufficiently alleged an underlying constitutional violation, a policy, or custom required to state a *Monell* claim for municipal liability, (2) NaphCare can only be held liable, if at all, for its direct actions, and (3) Plaintiff has not alleged any facts that would show NaphCare's training program is constitutionally defective or causally connected to Trammell's death. Plaintiff has only made conclusory allegations, the extent of which are not sufficient to state a claim.

Accordingly, the NaphCare Defendants move to dismiss all Plaintiff's claims because they are not sufficiently pled, nor can Plaintiff state a claim to relief that is plausible on its face.

## II.  <u>RELEVANT FACTS AND PROCEDURAL POSTURE</u>[1]

On or about March 13, 2023, Trammell was booked into the Montgomery County Jail. (Doc. 7, PageID 67). Upon booking, Trammell spoke with NaphCare Mental Health Professional Kathleen Fraser ("Fraser") at or about 1:13 a.m. after which Fraser recommended Trammel be placed on suicide watch based on his suicidal ideations. (*Id*.). While on suicide watch, Trammell exhibited a range of behaviors over the course of nine hours. These behaviors included screaming (*Id*. at 68, 71); pacing (*Id*. at 68, 70); banging his fist against his cell door (*Id*.); jumping (*Id*. at 71); flailing (*Id*. at 73-74); and hitting his head on two occasions (*Id*. at 69, 76)—the latter of which was escalated behavior that occurred six hours apart and was swiftly addressed by the NaphCare Defendants and others. Importantly, prior to and immediately after both incidents where Trammell hit his head, the NaphCare Defendants responded appropriately based on the totality of the circumstances.

---

[1] These facts, as alleged by Plaintiffs, are accepted for the purposes of this Motion only. The NaphCare Defendants do not concede that these facts are accurate or consistent with the records as stated.

**A.  Trammell Hit His Head at 4:15 A.M. and Was Immediately Placed in a Restraint Chair and Monitored**

Trammell was placed on suicide watch at 1:13 a.m. where an officer monitored him. (*Id*. at 68). Trammell occasionally hit his head on the window of his door, after which, he was seen by an officer at 3:15 a.m. and Fraser, a NaphCare mental health professional, at 3:18 a.m. (*Id*.).

Approximately one hour later, at or around 4:15 a.m., Trammell escalated his behavior and began forcefully hitting his head. (*Id*. at 69). Immediately thereafter, Trammell was removed from his cell and placed in a restraint chair by correctional officers to keep him from hurting himself. (*Id*.). Fraser came back at 4:20 a.m. to check on Trammell while in the restraint chair and spoke with him "at length" to deescalate his depressed mood and suicidal ideations. (*Id*.). Redman, a NaphCare medic, checked Trammell's restraints and forehead for signs of injury and detected none—this was later corroborated by different medical personnel. (*Id*. at 70, 77). Trammell was returned to his cell at 6:15 a.m. after approximately two hours in the restraint chair. (*Id*. at 70).

After Trammell was removed from the restraint chair the first time, he was monitored constantly. In fact, Trammell was observed by 10 people over the next four hours.

- **After 6:15 a.m.**: Trammell was observed by a sergeant wherein he displayed non-harmful behavior of pacing and hitting the cell door with his fist (*Id*.);

- **7:56 a.m.**: Smith talked to Trammell to check on him (*Id*. at 71);

- **8:15 a.m.**: Trammell was observed by NaphCare medical staff at or around 8:15 a.m. where he noted Trammell did not have a visible head injury (*Id*. at 77) ("[A]t 10:22… [Medic Chad Rowland] observed Isaiah's visible closed head injury ***and remarked that Isaiah had not had that injury when he appeared for a receiving screening at around 8:15 that morning***." (emphasis added));

- **9:00 a.m.**: The same Montgomery County sergeant checked on Trammell and noted he could not accommodate Trammell's request for a blanket and mat to ensure his safety under the jail's suicide watch precautions (*Id*. at 70);

- **9:30 a.m.**: The sergeant escorted Trammell to video court and observed him engaging in non-physically harmful conduct of jumping and screaming in his cell (*Id*. at 71);

3

- **10:00 a.m.**: An officer spoke to Trammell before NaphCare mental health professionals stepped in to try and assist (*Id*. at 72);

- **10:01 a.m.**: Smith and Holzfaster talked to Trammell, and he expressed suicidal ideations. In response, Holzfaster attempted to deescalate by suggesting Trammell calm down or he would have to return to the restraint chair to keep him from executing his plan to hurt himself (*Id*. at 72-73); and

- **10:04 a.m.**: Holzfaster and Smith informed multiple officers in the area about Trammell's suicidal ideations to ensure continued observation before leaving the area presumably to continue with their job responsibilities. (*Id*. at 73).

The group of County officers did not leave the area for the next thirteen minutes. (*Id*. at 73-74). During this time, they observed Trammell scream, pace, and flail his arms—again, non-self-harming behavior. (*Id*.).

## B. Trammell Runs at and Hits His Cell Door While Under Observation and Was Immediately Assisted and Taken to the Hospital

At 10:17 a.m., without warning by verbal declaration or otherwise, Trammell ran from the back of his cell into his door, striking his head in an apparent suicide attempt. (*Id*. at 76). Officers in the area responded quickly by retrieving Trammell, moving him to a restraint chair—despite his resisting—to keep him from further injuring himself as he continued to hit his head against the wall after running into the door, and calling medical personnel. (*Id*. at 76-77). Trammell was securely strapped in the restraint chair by 10:22 a.m. and NaphCare medical staff began an examination to assess Trammell's condition. (*Id*. at 77).

Medic Rowland observed Trammell now had a bruise on the right side of his head—one he noted was not there less than two hours before—and requested further evaluation from the jail's on-duty registered nurse, Darrell Rader. (*Id*. at 77-78). Nurse Rader arrived at approximately 10:25 a.m. and determined Trammell needed to go to the hospital for a CT scan. (*Id*. at 77). An ambulance was called and arrived approximately 15 minutes later. (*Id*. at 78).

4

Despite the NaphCare Defendants, officers, and hospital staff's best efforts, Trammell succumbed to his injury three days later on March 16, 2023. (*Id*. at 78). Trammell's official cause of death was complications of blunt force head trauma. (*Id*. at 79).

**C.      Plaintiff Filed This Lawsuit Asserting Baseless Allegations Against the NaphCare Defendants**

As a result of Trammell's death, Plaintiff William Harrelson II brought this lawsuit on behalf of Trammell's estate ("Plaintiff"). Plaintiff filed his Original Complaint on March 10, 2025 and First Amended Complaint on April 16, 2025 against Montgomery County, Montgomery County Board of County Commissions (collectively referred to as "Montgomery County"), NaphCare, and 11 named individuals, including NaphCare employees, Holzfaster, Smith, and Redman (collectively referred to as the "NaphCare Individuals"). (*Id*. at 63-64). In their Complaint, Plaintiff alleges the following causes of action against the NaphCare Defendants:

| | |
|---|---|
| Count I | Violation of the Fourteenth Amendment Pursuant to 42 U.S.C. § 1983 for Deliberate Indifference to a Serious Medical Need Against the NaphCare Individuals |
| Count III | Violation of the Fourteenth Amendment Pursuant to 42 U.S.C. § 1983 for Supervisory Liability Against Holzfaster |
| Count V | Wrongful Death Claim Under Ohio Rev. Code § 2125.02 Against the NaphCare Defendants |
| Count VI | Survivorship Claim Under Ohio Rev. Code §§ 2125.01, 2305.21 Against the NaphCare Defendants |
| Count VII | *Monell* Claim – Violations of the Fourteenth Amendment Pursuant to 42 U.S.C. § 1983 for Deliberate Indifference to Serious Medical Needs of Pretrial Detainees (and Failure to Train) |

The NaphCare Defendants are now moving to dismiss Plaintiff's entire Complaint against them for failure to state a claim.

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of complaints when they fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Plausibility is a context-specific inquiry, and the allegations in the complaint must permit the court to infer more than the mere possibility of misconduct." *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365 (6th Cir. 2011).

### IV. DISMISSAL IS WARRANTED AS TO PLAINTIFF'S § 1983 CLAIMS AGAINST THE NAPHCARE INDIVIDUALS

Plaintiff asserts Trammell's death was the result of deliberate indifference to his medical needs under the 14th Amendment pursuant to § 1983. The reality, however, is the NaphCare Individuals took appropriate actions to address Trammell's behavior. At most, Plaintiff alleges disagreement with the medical treatment Trammell received, which does not give rise to a constitutional violation. (Doc. 7, PageID 91-93) *See Britt v. Hamilton Cnty.*, 531 F. Supp. 3d 1309, 1339 (S.D. Ohio 2021) ("Although Plaintiff now questions the adequacy of those assessments and argues that NaphCare should have responded differently, courts are generally reluctant to second guess the medical judgment of prison officials."); *Jordan v. Summit*, Case No. 5:17-cv-02047, 2018 WL 4335598, at *8 (N.D. Ohio, Sep. 11, 2018) ("[N]o decision of this Court establishes the right to the proper implementation of adequate suicide prevention protocols." (quoting *Taylor v. Barkes*, 575 U.S. 822, 826 (2015))).

A. **Plaintiff's § 1983 Claims Against the NaphCare Individuals Must Be Dismissed Because Plaintiff Cannot Satisfy the Subjective Component of Deliberate Indifference**

A deliberate indifference claim has two components: objective and subjective. *Batton v. Sandusky Cnty., Ohio*, Case No. 3:21-cv-1771, 2023 WL 375206, at *3 (N.D. Ohio, Jan. 24, 2023). To satisfy the objective component, the plaintiff must allege that the medical need at issue is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "The subjective component of a deliberate indifference claim 'requires that a plaintiff allege facts, which if true, would show that (1) the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, (2) that he did in fact draw that inference, and (3) that he disregarded that risk.'" (quoting *Jerauld v. Carl*, 405 Fed. Appx. 970, 975-976 (6th Cir. 2010)). A pretrial detainee "must allege 'more than negligence but less than subjective intent—something akin to reckless disregard.'" *Batton*, 2023 WL 375206, at *3 (quoting *Brawner v. Scott Cnty., Tenn.*, 14 F.4th 585, 597 (6th Cir. 2021)).

Here, the NaphCare Individuals only address the subjective component of Plaintiff's deliberate indifference claim and Plaintiff's failure to sufficiently plead facts to satisfy same.[2] Plaintiff's Complaint contains no factual allegations that plausibly demonstrate the NaphCare Individuals knew that Trammell faced a substantial risk of serious harm and recklessly disregarded said risk based on the medical care given and precautions taken by them and others, which included: (1) putting Trammell under suicide watch, (2) counseling and checking Trammell for physical injuries, (3) monitoring and ensuring others continued to monitor Trammell, (4)

---

[2] The NaphCare Individuals do not dispute Trammell was experiencing a "sufficiently serious" medical need sufficient to satisfy the objective component as Trammell expressed that he wanted to commit suicide and was properly placed under suicide watch. *Batton*, 2023 WL 375206, at *3.

responding with medical immediately after Trammell's suicide attempt, and (5) sending Trammell to the hospital.

    1.  <u>Redman Did Not Recklessly Disregard Trammell's Medical Needs as He Provided Him with Medical Care</u>

Plaintiff alleges "Redman deliberately chose to ignore [Trammell]'s head injuries on two separate occasions, thus recklessly disregarding the obvious and unjustifiably high risk that [Trammell] had sustained… a traumatic brain injury and [] would continue to self-injure." (Doc. 7, PageID 91). Plaintiff further avers that Redman *should have* intervened and "requested evaluations by a higher level medical professional or…transferred [Trammell] to a hospital or psychiatric hospital." (*Id.*). Plaintiff's contentions are unsupported by the facts alleged and the law. *See O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994) ("Mere conclusions [] will not be sufficient to state a civil rights claim.").

The facts and circumstances related to Redman's single interaction with Trammell are pled as: (1) mental health professional, Fraser, spoke with Trammell around 3:18 a.m. when Trammell stated, "My head hurts… I can't sleep there because my head hurts" (Doc. 7, PageID 68-69), (2) after this, Fraser asked Redman to conduct a medical evaluation on Trammell for his reported head pain (*Id.* at 69), (3) Trammell began hitting his head at 4:15 a.m. (*Id.*), and (4) Redman checked Trammell's head after he was placed in a restraint chair around 4:20 a.m. (*Id.* at 70).

First, Redman did not *ignore* Trammell or an alleged head injury. As indicated, Redman performed a medical evaluation on Trammell's head roughly an hour after he spoke with Fraser and almost immediately after Trammell hit his head. *See Grabow v. Cnty. Of Macomb*, 580 Fed. Appx. 300, 307 (6th Cir. 2014) ("Inmates do not have a [14th] Amendment right to be screened correctly for suicidal tendencies, but [jail] officials who have been alerted to a [detainee's] serious medical needs are under an obligation to offer medical care to such [detainee]."). In an attempt to

sideswipe this uncontroverted fact, Plaintiff makes several "factual inferences" that border on argument to support their claim. *Iqbal*, 556 U.S. at 678, 681 (court not required to accept plaintiff's legal conclusions nor are plaintiff's conclusory allegations "entitled to be assumed true"). For example, Plaintiff makes no assertion Fraser had actual knowledge that Trammell hit his head at the point she spoke to Redman. In fact, Trammell did not report his head pain was "caused by banging his head onto hard surfaces" as alleged; he simply said, "my head hurts." (Doc. 7, PageID 69). Thus, Plaintiff's allegations that Redman did not evaluate Trammell (even though he did) "despite this *known traumatic head injury*" is sheer conjecture. (*Id.*) (emphasis added).

Second, Plaintiff contends Redman's evaluation was insufficient because of Trammell's "obvious head injury." (*Id.*). But again, Redman did in fact perform a medical evaluation which denotes Redman did not disregard a substantial risk to Trammell. Even assuming *arguendo* that the evaluation was performed improperly or did not comply with NaphCare's policies, that does not rise to a constitutional violation. *See Jordan*, 2018 WL 4335598, at *8 (court holding allegation that jail policies were not adhered to did not state a deliberate indifference claim under § 1983).

Finally, and perhaps most importantly, Plaintiff has not sufficiently pled that Redman's acts or omissions were the proximate cause of Trammell's death. Specifically, Plaintiff has not adequately pled that Trammell's act of hitting his head at 4:15 a.m.—let alone Redman's medical examination of him immediately thereafter—contributed in any way to his injury or passing. Trammell attempted suicide by running into a metal door roughly six hours after Redman examined him. Plaintiff's desire to reach for a temporally remote interaction between Redman and Trammell is inadequate to demonstrate Redman had subjective knowledge of a risk of serious harm to Trammell as it related to his head or otherwise; that Redman disregarded that alleged risk; or that Redman engaged in any conduct that was more than mere negligence.

Accordingly, Plaintiff's deliberate indifference claim against Redman should be dismissed.

> 2.  <u>Holzfaster and Smith Did Not Recklessly Disregard Trammell's Medical Needs as They Provided Him with Medical Care and Informed Officers in the Area of His Suicidal Ideations</u>

Plaintiff alleges Holzfaster and Smith were deliberately indifferent to Trammel's medical needs because they "left [Trammell] without de-escalating his obvious psychiatric crisis[,] refused to provide him further care" and were "not competent to handle [Trammell]'s serious medical needs…." (Doc. 7, PageID 92). Again, Plaintiff takes issue with the actions Holzfaster and Smith actually took *i.e.* Plaintiff's allegations are not that Holzfaster and Smith failed to take *any* action, but that they did not do their actions well. Like Redman, Plaintiff's allegations cannot satisfy a deliberate indifference claim. As explained in Section IV.A.1, imperfect care is not a constitutional violation. *See Britt,* 531 F. Supp. 3d at 1339; *Jordan*, 2018 WL 4335598, at *8.

Plaintiff's Complaint alleges Holzfaster and Smith talked to Trammell around 10:01 a.m. (*Id*. at 72). While Plaintiff alleges Smith took a more passive role in the conversation, Trammell expressed his desire to kill himself to both of them. (*Id*.). Holzfaster attempted to calm Trammell by literally telling him to calm down. (*Id*. at 72-73). Holzfaster also attempted to reason with Trammell by telling him he would have to be put back in the emergency restraint chair based on his plan to hurt himself. (*Id*.). After Holzfaster and Smith concluded the check-in with Trammell, they both went to officers in the area and informed them Trammell "had continued suicidal ideation and [] planned to hit his head on the wall." (*Id*. at 73). Holzfaster and Smith ensured the officers were aware of the risk before leaving the area and the officers remained in the area until Trammell attempted suicide by a method he had not described—running full speed into the door of his suicide watch cell. (*Id*.).

These facts do not support a deliberate indifference claim. Namely, Plaintiff cannot demonstrate how Holzfaster and Smith's attempt to deescalate—whether successful or not—amounts to a criminal or reckless disregard of Trammell's safety. That is because it does not.

*Galloway v. Anuszkiewicz* is instructive. 518 Fed. Appx. 330 (6th Cir. 2013). In *Galloway*, an inmate exhibited odd behavior during intake, including arguing with his right hand and responding to a question about thoughts of self-harm by becoming agitated, pushing over a chair, and then walking away. *Id*. at 331. The nursing staff placed the inmate on psychiatric seclusion precautions with observations for self-harm. *Id*. Later that day, the inmate's precautions were but he was still monitored every fifteen minutes. *Id*. The jail's psychologist ordered the inmate be given a suicide precaution blanket in lieu of standard bedding after personally evaluating the inmate. *Id*. at 331-32. Later, a corrections officer allowed the inmate out of his cell to use the telephone, and the inmate hung himself with a phone cord. He died after being transported to a nearby hospital. *Id*. at 332.

When addressing the plaintiff's deliberate indifference claim against the psychologist, the court found that even if the psychologist perceived facts from which he drew an inference that the decedent exhibited a "strong likelihood" of suicide, ***no reasonable jury could find that the psychologist deliberately disregarded the suicide risk by not taking the extra step of informing the jail staff that he thought the decedent was suicidal***. *Id*. at 333.

Here, Holzfaster and Smith took that extra step and also offered care in the form of mental health services to try and calm Trammell down. Based on the foregoing, Plaintiff has not pled facts sufficient to show Holzfaster and Smith deliberately disregarded a risk of serious harm as they offered medical assistance in response to Trammell's declarations of self-harm *and then notified others of the situation* prior to leaving his area.

Plaintiff's deliberate indifference claims against Holzfaster and Smith should be dismissed.

**B.      Plaintiff's § 1983 Supervisory Liability Claim Against Holzfaster Must Be Dismissed Because Plaintiff Cannot Satisfy a Single Element of the Claim**

Plaintiff's Complaint as to his Count III, supervisory liability claim, against Holzfaster is a prime example of the inadequate and threadbare allegations Rule 12(b)(6) motions were designed to dismiss.

"[T]o succeed on a supervisory liability claim, [a plaintiff] must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 865 (6th Cir. 2020) (internal quotations omitted). This "requires some active unconstitutional behavior on the part of the supervisor." *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016)). A plaintiff "must show that the supervisors somehow encouraged or condoned the actions of their inferiors." *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006). Moreover, there must be a "causal connection"—cause in fact and proximate cause—between the supervisor defendant's "active unconstitutional behavior" and the plaintiff's injuries. *Peatross*, 818 F.3d at 242; *Garza*, 972 F.3d at 868. In short, a plaintiff must show that: (1) a subordinate engaged in unconstitutional conduct, (2) a supervisor condoned and engaged in unconstitutional conduct, (3) a constitutional injury in fact occurred, (4) the supervisor's unconstitutional behavior actually and proximately caused the constitutional injury, and (5) the supervisor was more than negligent or reckless.

Here, Plaintiff does little more than provide conclusory and vague recitations of the elements without supporting facts. Holzfaster has addressed the elements of the supervisory liability claim in the preceding sections of this Motion as the NaphCare Individuals have shown:

(1) Smith did not engage in unconstitutional conduct,[3] (2) Holzfaster did not engage in unconstitutional conduct, (3) Trammell did not suffer a constitutional injury, (4) Holzfaster did not cause Trammell's injury, and (5) Holzfaster was not deliberately indifferent to Trammell.

Accordingly, pursuant to Federal Rule of Civil Procedure 12(b)(6), the NaphCare Individuals request that this Court dismiss Plaintiff's Complaint as to Counts I and III for failure to state a claim upon which relief can be granted.

## V.      DISMISSAL IS WARRANTED AS TO PLAINTIFF'S § 1983 *MONELL* CLAIMS AGAINST NAPHCARE

In Count VII, Plaintiff asserts a *Monell* claim based on deliberate indifference to serious medical needs of pretrial detainees and purported failure to train or supervise under the 14th Amendment based on episodic acts or omissions. (Doc. 7, PageID 100-02). It is well-established that a municipality is not liable under § 1983 on the theory of *respondeat superior*. *Broughton v. Premier Health Care Services, Inc.*, Case No. 1:12cv991, 2015 WL 5582134, at *2 (S.D. Ohio Sep. 23, 2015). Counties therefore are not liable for constitutional violations committed by county employees unless those violations result directly from a municipal custom or policy. *Id*. To establish municipal liability under § 1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right. *Batton*, 2023 WL 375206, at *5.

To proceed beyond the pleading stage, a complaint's description of a policy or custom and its relationship to the underlying constitutional violation cannot be conclusory; it must contain specific facts. *Id*. The alleged policy also must be causally connected to the plaintiff's claim and injuries. *Id.* (quoting *Pineda v. Hamilton Cnty.*, Ohio, 977 F.3d 483, 490 (6th Cir. 2020) ("Such

---

[3] Holzfaster does not concede that Smith is her subordinate or that she is Smith's supervisor; however, these facts, as alleged by Plaintiffs, are accepted for the purposes of this Motion only.

generalized pleading is typically insufficient for a § 1983 [*Monell*] claim where it must be shown that 'a defendant was *personally* at fault and that the defendant's culpable conduct (not somebody else's) caused the injury." (emphasis in original))). Assuming NaphCare is the functional equivalent of a municipality, Plaintiff must allege more than a conclusory statement asserting "a policy exists; and therefore, that policy resulted in Plaintiff's injury."

**A.     Plaintiff's § 1983 *Monell* Claim for Deliberate Indifference Against NaphCare Must Be Dismissed Because Plaintiff Cannot Satisfy a Single Element of the Claim**

"Deliberate indifference against a municipality 'is a stringent standard of fault,' which Plaintiff bears the burden of demonstrating." *Britt*, 531 F. Supp. 3d at 1337 (quoting *Shadrick v. Hopkins Cnty., Ky.*, 805 F.3d 724, 737 (6th Cir. 2015)). Plaintiff's attempt to broadly assert a constitutional claim of deliberate indifference against NaphCare under the *Monell* doctrine should be dismissed because (i) Plaintiff fails to adequately allege an underlying constitutional violation, (ii) Plaintiff fails to allege that a policy or custom sufficient to establish municipal liability exists, and (iii) Plaintiff fails to allege that any NaphCare policy or custom was the "moving force" behind Trammell's death or injury. *See Britt*, 531 F. Supp. 3d at 1337 (quoting *North v. Cuyahoga Cnty.*, 754 F. App'x 380, 386 (6th Cir. 2018)). Moreover, just like a deliberate indifference claim against an individual defendant, the standard for *Monell* liability is comprised of both an objective and subjective component. *Id*.

1.     <u>Plaintiff Has Not Adequately Alleged an Underlying Constitutional Violation.</u>

"Municipalities may be held liable under § 1983 for constitutional violations committed by their employees if the violations result from municipal practices or policies. But where there has been no showing of individual constitutional violations on the part of the officers involved, there can be no municipal liability." *Campbell v. Riahi*, Case No. 1:20-cv-678, 2023 WL 5979211, at *8 (S.D. Ohio Sep. 13, 2023) (quoting *Baker v. City of Trenton*, 936 F.3d 532, 535 (6th Cir.

2019)). As addressed *supra* in Section IV.A., Plaintiff has not alleged sufficient facts to show the NaphCare Individuals (1) acted with subjective deliberate indifference, (2) or responded with deliberate indifference to the risk of any individuals, Trammell or otherwise. As such, Plaintiff has not shown the existence of individual constitutional violations, which warrants dismissal of Plaintiff's *Monell* claims.

        2.    <u>Plaintiff Has Not Adequately Alleged a NaphCare Policy or Custom.</u>

To the extent the Court disagrees and finds Plaintiff has sufficiently pled a constitutional injury—they have not, Plaintiff's *Monell* claim still fails because they have not adequately pled a municipal policy or custom adopted with deliberate indifference to detainees' constitutional rights. Plaintiff's § 1983 claims must be dismissed because they (1) have not sufficiently alleged a policy or custom, and (2) have not sufficiently alleged a pattern of unconstitutional conduct. *Britt*, 531 F. Supp. 3d at 1339.

        i.    <u>*Plaintiff does not identify a policy, custom, or practice.*</u>

Plaintiff has not sufficiently identified the alleged policies at issue. In fact, Plaintiff has not identified any policy of NaphCare's under its Count VII *Monell* claim.[4] Plaintiff merely broadly asserts that NaphCare (1) uses its mental health professionals to "gatekeep medical and psychiatric care" because Trammell was "never seen or treated by a psychiatrist," (Doc. 7, PageID 79), and (2) had a custom of failing to monitor inmates for known medical problems. (*Id*. at 82). This is flawed for numerous reasons.

First, the "policies" are categorically false based on Plaintiff's own factual allegations. As noted throughout the Motion, Trammell received medical care when he was seen by Medic Rowland, Redman and Nurse Rader. (*Id*. at 70, 77). In addition to these individuals, Trammell was

---

[4] "At all times relevant, **Defendant Montgomery County**, including through its **Board of County Commissioners**, had interrelated *de facto* policies, practices, and customs which included, *inter alia*…." (Doc. 7, ¶ 221) (emphasis added).

monitored consistently, sometimes for long stretches, before and after his suicide attempt. (*Id.* at 67-74). Second, this alleged policy is too vague, generalized, and conclusory to state a *Monell* claim. Finally, this alleged policy is isolated to Trammell, not a widespread policy, custom, or practice. *See Britt*, 531 F. Supp. 3d at 1340 (quoting *Gregory*, 444 F.3d at 763 ("[A] plaintiff cannot rely solely on a single instance to prove the existence of an unconstitutional custom.")). Thus, Plaintiff has not sufficiently alleged a policy or custom.

> ii. *Plaintiff does not identify a systemic or persistent pattern of deliberate indifference to the medical needs of suicidal detainees.*

Since Plaintiff does not identify any particular policies they must proceed under the theory of a widespread practice, which requires a pattern displaying persistent unconstitutional conduct that NaphCare had constructive notice of. *See Britt*, 531 F. Supp. 3d at 1339-40. Plaintiff has not adequately alleged a pattern displaying similar, specific, and sufficiently numerous prior incidents for the alleged policies. Instead, Plaintiff tries to manufacture a pattern by citing entirely irrelevant incidents that do not involve similar factual scenarios, including:

> **Aaron Dixon** – Mr. Dixon suffered a head injury from an indeterminate source, was taken to the hospital, the hospital returned Mr. Dixon to the jail presumably after evaluation and clearance, and he was found unresponsive in the hours after. (Doc. 7, PageID 82).
>
> **Steven Blackshear** – Mr. Blackshear was found unresponsive in his cell after allegedly suffering from opiate and benzodiazepine withdrawals. (*Id.* at 83).
>
> **Amber Goonam** – Ms. Goonam was booked following a possible drug overdose, after which she was seen by NaphCare medical staff, but was sadly found unresponsive the next morning. (*Id.* at 83-84).
>
> **Amanda Campbell** – Ms. Campbell was found unresponsive—the result of which was unclear, though Ms. Campbell allegedly had a history of heart problems and used methamphetamines, opioids, and alcohol. (*Id.* at 85).

Notably, none of these individuals appeared to commit or attempted to commit suicide; none of these individuals appeared to request psychiatric assistance; and all these individuals were treated for their medical problems to the extent they were known.

16

Accordingly, Plaintiff has failed to sufficiently allege an unconstitutional policy or a pattern displaying similarity, specificity, and involving sufficiently numerous prior incidents. Plaintiff's *Monell* claims should be dismissed.

3.     <u>Plaintiff Fails to Allege Any NaphCare Policy or Custom Was the "Moving Force" Behind the Alleged Constitutional Injury to Trammel.</u>

To succeed on a *Monell* claim, Plaintiff must show NaphCare itself, through a policy or practice, was the "moving force" behind the constitutional violation. *Searcy v. City of Dayton*, 38 F.3d 282, 287 (6th Cir. 1994). Instead, Plaintiff simply—and conclusively—states an imaginary policy contributed to Trammell's death without any factual support for the same. Plaintiff states,

> Defendant NaphCare, Inc. is responsible for the mental health care and medical care for people incarcerated in the Montgomery County Jail…. The unconstitutional actions of the Defendants as alleged in this complaint were part and parcel of a widespread jail policy, practice and custom is further established by the involvement in, and ratification of, these acts by municipal supervisors and policymakers…. This widespread policy resulted in a pattern of unconstitutional denials of medical care by NaphCare employees… of which Defendants…were aware. The policies, practices and/or customs alleged in this complaint, separately and together, are the proximate cause of the injuries to and death of Isaiah Trammell. (Doc. 7, PageID 101-02).

Plaintiff does not identify or allege a single custom or practice of NaphCare that logically or proximately caused an alleged violation of Trammell's constitutional rights. Plaintiff's failure to explain how NaphCare's policy of "medical gatekeeping" caused Trammell's constitutional injury is fatal to its *Monell* claim against NaphCare. *See Britt*, 531 F. Supp. 3d at 1338 ("Plaintiff must still show that the municipality itself, through its acts, policies, or customs, violated [Trammell's constitutional] rights by manifesting deliberate indifference to his serious medical needs."). Moreover, Plaintiff fails to allege that NaphCare's purported actions were taken with the requisite degree of culpability. *Id*. at 1337 ("The subjective component requires proof that defendants possessed a culpable state of mind that is routinely equated ... with recklessness.").

Accordingly, Plaintiff has failed to sufficiently plead his *Monell* claim for deliberate indifference against NaphCare and should be dismissed.

**B.     Plaintiff's § 1983 *Monell* Claim for Failure to Train Against NaphCare Must Be Dismissed Because Plaintiff Cannot Satisfy a Single Element of the Claim**

Finally, NaphCare addresses Plaintiff's *Monell* claim for failure to train and supervise. To find NaphCare liable on this theory, Plaintiff must show: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Winkler v. Madison Cnty.*, 893 F.3d 877, 902 (6th Cir. 2018) (citation omitted). "The Sixth Circuit has held that a plaintiff cannot meet [their] burden of proof of demonstrating an inadequate training program by showing: (1) 'that one staff member was unsatisfactorily trained,' (2) that 'an otherwise sound training program was negligently administered,' or (3) that 'harm could have been avoided if the nurse had had better or more training, sufficient to equip [her] to avoid the particular injury-causing conduct.'" *Britt*, 531 F. Supp. 3d at 1340 (quoting Shadrick, 805 F.3d at 738)).

Here, Plaintiff did not assert facts sufficient to plead a single element of this claim. Plaintiff instead merely relies on generalities and conclusory allegations concerning NaphCare's training—which are not relevant to Plaintiff's claims or injuries. The extent of Plaintiff's allegations related to inadequate training is as follows: "Upon information and belief, Defendant NaphCare failed to properly train its mental health professionals on how to assist autistic or otherwise neurodivergent inmates, including those who were stimming and/or suicidal." (Doc. 7, PageID 80).

First, Plaintiff fails to demonstrate *how* the particular training is defective or *how* it caused the ultimate injury. Specifically, Plaintiff has not pled how training of any kind would prevent a neurodivergent person from running into a metal door while on suicide watch after pleading that every aspect of being detained was a trigger that Trammell struggled to regulate. (*Id*. at 65

("[Trammell]'s triggers included being touched by people he did not know, being restrained, being confined in a small space, being nude, and loud noises.")). Moreover, none of the four alleged "*Monell* examples" offered by Plaintiff relate to autistic or neurodivergent individuals. Plaintiff's allegation is devoid of the requisite specificity and causal connection needed to survive dismissal; and therefore, Plaintiff cannot state a *Monell* claim for failure to train or supervise.

Based on the foregoing reasons, Plaintiff's attempt to establish municipal liability under § 1983 for (1) deliberate indifference to serious medical needs, and (2) the failure to train or supervise, must be dismissed for failure to state a claim upon which relief can be granted. Accordingly, Plaintiff's Complaint as to Count VII should be dismissed.

## VI.    DISMISSAL IS WARRANTED AS TO PLAINTIFF'S STATE LAW CLAIMS AGAINST THE NAPHCARE DEFENDANTS

Plaintiff's state law claims of wrongful death and survivorship should be dismissed for the reasons outlined above. Namely, Plaintiff has failed to plead that the NaphCare Defendants, individually, engaged in a wrongful, neglectful, reckless, or negligent act that proximately caused Trammell's death. Moreover, the Court should dismiss Plaintiff's state law claims for lack of jurisdiction. *See* 28 U.S.C. § 1367(c)(3) (noting that a district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if…(3) the district court has dismissed all claims over which it has original jurisdiction"); *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996) (where "all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims").

In order to prevail on claims for wrongful death, a plaintiff must prove: "(1) a wrongful act, neglect, or default of the defendant that proximately caused the death and that would have entitled the decedent to maintain an action and recover damages if death had not ensued; (2) the decedent was survived by a spouse, children, parents, or other next of kin; and (3) the survivors

suffered damages by reasons of the wrongful death." *Wade v. Mancuso*, 111 N.E.3d 575, 579 (9th Dist. 2018); Ohio Rev. Code § 2125.01. Similarly, to establish a survivorship claim, a plaintiff must prove the NaphCare Defendants' actions *individually* were the proximate cause of Trammell's injury. *See Frost v. Evenflo Co., Inc*., C.A. No. 2022-CA-29, 2023 WL 8670063, at *13 (2nd Dist. Dec. 15, 2023) (court finding no triable issue where defendant did not proximately cause injury to decedent).

As outlined in the preceding arguments, Plaintiff has not pled sufficient facts that, if accepted as true, would state a claim to relief that is plausible on its face. The actions complained of are: (1) Redman checked Trammell's head for injury six hours before he committed suicide, (2) Holzfaster and Smith talked to Trammell and informed officers of Trammell's mental state before leaving the area roughly 20 minutes before Trammell committed suicide, and (3) NaphCare's unknown policy and training related to autistic, suicidal detainees. These actions are neither negligent, neglectful, or reckless nor can they be said to have "some reasonable connection" to Trammell's head injury. *Frost*, 2023 WL 8670063 *14 ("[P]roximate cause requires some reasonable connection between the act or omission of the defendant and the damage the plaintiff has suffered."). Plaintiff's conclusory statements that the NaphCare Defendants acted wrongfully and proximately caused Trammell's death are not sufficient (or true).

Accordingly, Plaintiff has not and cannot meet the Rule 12(b)(6) standard as to its wrongful death and survivorship claims. Therefore, Plaintiff's Counts V and VI should be dismissed.

## VII.     CONCLUSION

The NaphCare Defendants respectfully request that the Court grant its Motion to Dismiss, dismiss all of Plaintiff's claims against them in this lawsuit, award the NaphCare Defendants all of their costs, and grant the NaphCare Defendants all further relief to which they are justly entitled at law or in equity.

Respectfully submitted this 15th day of July, 2025.

<u>*/s/ Erika Dackin Prouty*</u>
Erika Dackin Prouty (0095821)
*Trial Attorney*
**BAKER & HOSTETLER LLP**
200 Civic Center Drive, Suite 1200
Columbus, Ohio 43215
Telephone: 614.462.4710
Facsimile: 614.462.2616
Email: eprouty@bakerlaw.com

Gregory C. Ulmer
*Admitted pro hac vice*
Texas Bar No. 00794767
gulmer@bakerlaw.com
Julia Bennett-Jean
*Pro hac vice application forthcoming*
Texas Bar No. 24106642
Email: jbennettjean@bakerlaw.com

811 Main Street
Suite 1100
Houston, TX 77002-6111
Telephone: 713.751.1600
Facsimile: 713.751.1717

Jarvarus A. Gresham
Georgia Bar No. 873933
*Admitted pro hac vice*
jgresham@bakerlaw.com

1170 Peachtree Street, NE
Suite 2400
Atlanta, GA 30309-7676
Telephone: 404.946.9791
Facsimile: 404.459.5734

*Attorneys for Defendants NaphCare, Inc.,*
*Brittanie Holzfaster, Cassie Kilpatrick Smith,*
*and Patrick Redman*

## **CERTIFICATE OF SERVICE**

I, Erika Dackin Prouty, hereby certify that on this 15th day of July, 2025, a copy of the foregoing Motion to Dismiss and Memorandum in Support was filed electronically. Notice of this filing will be sent by operation of the Court's CM/ECF filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's CM/ECF system.

*/s/ Erika Dackin Pouty*
Erika Dackin Prouty (0095821)

*Attorney for Defendants NaphCare, Inc., Brittanie Holzfaster, Cassie Kilpatrick Smith, and Patrick Redman*

22