## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION (DAYTON)

| | | |
|---|---|---|
| **ESTATE OF ISAIAH TRAMMELL,** | : | **CASE NO. 3:25-cv-00086** |
| | : | |
| **Plaintiff,** | : | **Judge Michael J. Newman** |
| | : | **Magistrate Judge Caroline H. Gentry** |
| **vs.** | : | |
| | : | |
| **MONTGOMERY COUNTY,** *et al.,* | : | |
| | : | |
| **Defendants.** | : | |

---

## MOTION TO DISMISS OF DEFENDANTS MONTGOMERY COUNTY AND THE MONTGOMERY COUNTY BOARD OF COUNTY COMMISSIONERS

---

Defendants Montgomery County and the Montgomery County Board of County Commissioners move to dismiss the Plaintiff's First Amended Complaint for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). A memorandum in support follows.

Respectfully submitted,

MATHIAS H. HECK, JR.
PROSECUTING ATTORNEY

By: */s/ Joshua T. Shaw*
Ward C. Barrentine (0074366)
Joshua T. Shaw (0087456)
Collin B. Showe (0093805)
Assistant Prosecuting Attorneys
301 West Third Street

P.O. Box 972
Dayton, Ohio 45422
Telephone: (937) 225-5654
Fax Number: (937) 225-4822
E-mail:      barrentinw@mcohio.org
             shawj@mcohio.org
             showec@mcohio.org

Counsel for Defendants Montgomery
County and the Montgomery County Board
of County Commissioners

<u>MEMORANDUM</u>

**I. STATEMENT OF THE CASE**

**A.    Procedural History**

Plaintiff, the administrator of the Estate of Isaiah Trammell, initiated this civil action by filing his original complaint on March 10, 2025. Doc. 1. The complaint named Montgomery County, several employees of the Montgomery County Jail ("Jail"), NaphCare, Inc., and three employees of NaphCare as defendants. *Id.* at PAGEID # 1, 4–5. On April 16, 2025, Plaintiff followed with his First Amended Complaint ("Amended Complaint"). Doc. 7. The Amended Complaint identified the Montgomery County Board of County Commissioners ("BCC") as an additional defendant. *Id.* at PAGEID # 60–61, 63–65. Otherwise, the defendants named in this suit remained the same. *Id.*

Montgomery County waived service of the Complaint, Doc. 5, and the BCC waived service of the Amended Complaint, Doc. 8. The parties jointly requested an extension of the Defendants' response deadline, so they could mediate the case and potentially resolve this matter without further litigation. Docs. 16. The Defendants obtained an extension until July 15, 2025, to respond to the Amended Complaint. Doc. 17. The parties engaged in a mediation conference June 30, 2025, as indicated in their joint request for extension of time. Plaintiff's claims remain outstanding, though the parties continue to be open to further negotiations.

1

**B.      Plaintiff's Allegations[1]**

Plaintiff, William M. Harrelson II, is the administrator of the estate of Isaiah Trammell, the subject of this civil action. Doc. 7, PAGEID # 63. The Amended Complaint indicates that close to midnight on March 12, 2023, officers of the Lebanon Police Department were dispatched to Trammell's residence to investigate a domestic violence complaint. *Id.* at PAGEID # 66. The officers determined no crime occurred but found an active arrest warrant out of Montgomery County for Trammell. *Id.* The Lebanon Police officers arrested Trammell for the warrant and arranged for his transfer to the custody of a Montgomery County deputy sheriff that evening. *Id.* at PAGEID # 66–67.

Upon arrival at the Montgomery County Jail ("Jail"), Trammell indicated he had autism and struck his head on the wall of the facility's outer receiving room., Doc. 7, PAGEID # 67. Defendant NaphCare was contracted to provide medical care to the Jail's inmates. *Id.* at PAGEID # 64. One of NaphCare's mental health professionals ("MHP"), Kathleen Fraser, responded to the receiving area and spoke with Trammell at approximately 1:13 a.m. on March 13, 2023. *Id.* at PAGEID # 67. Trammell expressed suicidal intent, so the MHP placed Trammell on high-risk suicide precautions. *Id.*

Trammell was placed in a suicide watch cell following his conversation with MHP Fraser. Doc. 7, PAGEID # 68. A couple hours later, Trammell struck his head on his cell

---

[1] Nothing in this recitation of the Plaintiff's allegations and claims should be construed as an admission to the Amended Complaint.

2

door. *Id.* Defendant Sergeant Joseph Solomon told Trammell to stop and arranged for Fraser to speak with Trammell again. *Id.* Fraser spoke with Trammell and asked Defendant Patrick Redman, a medic and NaphCare employee, to evaluate Trammell's head pain. *Id.* at PAGEID # 68–69. According to the Amended Complaint, Redman did not evaluate Trammell. *Id.* at PAGEID # 69.

Another hour passed, and Defendant Correctional Officer Connor Blum saw Trammell forcefully strike his head multiple times. Doc. 7, PAGEID # 69. Trammell was placed in an emergency restraint chair and shortly thereafter, spoke with MHP Fraser again about his depressed mood and suicidal ideation. *Id.* at PAGEID # 69–70. Defendant Redman monitored Trammell's restraints and viewed his forehead. *Id.* at PAGEID # 70.

Trammell was released from the emergency restraint chair at 6:15 a.m. and remained under suicide watch. Doc. 7, PAGEID # 70. Around 7:56 a.m., Defendant Cassie Smith, another NaphCare MHP, visited Trammell. *Id.* at PAGEID # 71. Approximately an hour later, Defendant Sergeant Brian Godsey saw Trammell pacing and hitting his cell door with his fist, so he contacted Smith. *Id.* at PAGEID # 70–71. Smith did not respond to see Trammell at the time. *Id.* at PAGEID # 71.

At about 9:30 a.m., Trammell attended video court at the Jail where he learned he would not be released from custody. Doc. 7, PAGEID # 71. After court, Trammell was returned to his cell, and Defendant Sergeant Godsey saw him jumping and screaming. *Id.* Sergeant Godsey requested that NaphCare mental health professionals respond to speak

3

with Trammell. *Id.* Before NaphCare mental health providers arrived, Defendant Correctional Officer Christopher Jones told Trammell to sit and "chill out." *Id.* at PAGEID # 72.

Defendant MHP Smith and Defendant Brittanie Holzfaster, a NaphCare employee and the Jail's Mental Health Director, met with Trammell at 10:01 a.m. and spoke with him for approximately three minutes. Doc. 7, PAGEID # 72–73. After Smith and Holzfaster left, Trammell remained distressed and screamed and paced in his cell. *Id.* at PAGEID # 73–74. The Amended Complaint indicates that during this time, Defendant Jones, as well as Correctional Officer Defendants Michael Bittinger, Daniel Choi, A. Littlejohn, and Adeline Osweiler, remained close enough to Trammell to see and hear him in his cell. *Id.* at PAGEID # 73.

At 10:17 a.m., Trammell forcefully struck his head multiple times in his cell. Doc. 7, PAGEID # 76. Defendant Sergeant Godsey again ordered Trammell to be placed in the emergency restraint chair. *Id.* As the correctional officers approached to secure Trammell, he struck his head again. *Id.* The officers were able to overcome Trammell and place him in the emergency restraint chair. At 10:25 a.m., a NaphCare nurse evaluated Trammell, noted his head injury, and arranged for his transport to the hospital by ambulance. *Id.* at PAGEID # 77.

Paramedics arrived to take Trammell to the hospital at 10:40 a.m., by which time he had lost consciousness. Doc. 7, PAGEID # 78. Trammell was admitted to a hospital but

4

expired on March 16, 2023. *Id.* The cause of death was identified as complications of blunt force head trauma. *Id.* at PAGEID # 79.

### C.    Plaintiff's Claims Against Montgomery County and the BCC

*Monell* **claim.** Against these alleged facts, the Plaintiff brings a *Monell* claim against Montgomery County and the BCC alleging deliberate indifference to the serious medical needs of pretrial detainees—the Seventh Claim for Relief of the Amended Complaint. Doc. 7, PAGEID # 100–102. The Amended Complaint contends Montgomery County and the Montgomery County Board of County Commissioners are responsible for the care and treatment of people incarcerated at the Jail. *Id.* at PAGEID # 101. Plaintiff states that the individual defendants allegedly acted under the unconstitutional policies, practices, and/or customs of Montgomery County and the BCC by purportedly denying medical care. *Id.* at PAGEID # 100–101. Plaintiff asserts that the alleged unconstitutional policies, practices, and/or customs of Montgomery County and the BCC proximately caused Trammell's injuries and death. *Id.* 102.

**State law claims.** Plaintiff also brings state law wrongful death and survivorship claims against Montgomery County and the BCC—the Fifth and Sixth Claims for Relief of the Amended Complaint, respectively. Doc. 7, PAGEID # 99–100. The wrongful death claim posits that all "Defendants directly and proximately caused Isaiah's wrongful death and directly and proximately caused his Estate and beneficiaries to suffer." *Id.* at PAGEID # 99. The survivorship claim asserts that "[a]s a direct and proximate result of the

negligent, willful, wanton, reckless, and/or outrageous conduct of Defendants, Isaiah Trammell was caused to suffer severe and serious mental anguish and severe conscious physical pain and suffering prior to his death." *Id.* at PAGEID # 100.

## II. APPLICABLE STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint on the basis that it "fail[s] to state a claim upon which relief can be granted." The moving party bears the burden of showing that the opposing party has failed to adequately state a claim for relief. *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citing *Carver v. Bunch*, 946 F.2d 451, 454–55 (6th Cir. 1991)). The purpose of a motion to dismiss under Rule 12(b)(6) "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod,* 988 F.2d 635, 638 (6th Cir. 1993). In ruling on a 12(b)(6) motion, a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DirecTV*, 487 F.3d at 476. "'[A] Rule 12(b)(6) motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* (citations omitted).

## III. ARGUMENT

The Amended Complaint fails to state a claim upon which relief can be granted against Montgomery County or the BCC. Montgomery County is not *sui juris*, and so it

cannot sustain liability for any of Plaintiff's claims. As for the BCC, this defendant was named in this civil action until the Plaintiff filed the Amended Complaint. At the time the Amended Complaint was filed, the two-year statute of limitations to bring § 1983 claims predicated on the alleged injury at the Jail in this case had lapsed. Plaintiff's *Monell* claim against the BCC is time-barred and must be dismissed.

Additionally, the *Monell*, survivorship, and wrongful death claims against Montgomery County and the BCC are fundamentally flawed. As a matter of law, these defendants neither control nor operate the Jail. They are not proper parties to these claims. Finally, Ohio's political subdivision immunity statutes warrant dismissal of the survivorship and wrongful death claims against the Montgomery County and the BCC. Under Ohio law, Montgomery County and the BCC are generally immune from damages allegedly caused by governmental functions, such as the jail operations at issue in this case. The Amended Complaint reveals no basis to conclude an exception to the statutory grant of general immunity applies.

## A. The Amended Complaint must be dismissed as to Montgomery County because it is not sui juris.

Under Federal of Civil Procedure 17, a party to a lawsuit must be *sui juris*. For a government entity like Montgomery County, a party's capacity to be sued is governed by reference to "the law of the state where the court is located"—Ohio law. Fed. R. Civ. P. 17(b)(3). Montgomery County is an uncharted county under Ohio law. *State ex rel.*

*Clearcreek Assocs. v. Montgomery Cty.*, 2025-Ohio-486, ¶ 7–8 (2d Dist.). "An unchartered county is merely 'an arm of the State without the capacity of being sued as a separate entity.'" *Estate of Fleenor v. Ottawa Cty.*, 2022-Ohio-3581, ¶ 12 (quoting *Townsend v. Wis. Desert Horse Assoc.*, 42 Wis. 2d 414, 421 (1969)). Instead, an unchartered Ohio county must be sued through its board of county commissioners, as provided by R.C. 301.22. *Estate of Fleenor*, 2022-Ohio-3581 at ¶ 8.

As a mere unchartered Ohio county, Montgomery County lacks the capacity to be sued. Montgomery County must be dismissed from this case. *See, e.g., MacConnell v. NaphCare, Inc.*, No. 3:13cv00034, 2013 U.S. Dist. LEXIS 130618, *6 (S.D. Ohio Sept. 12, 2013) (citing *McGuire v. Ameritech Servs., Inc.*, 253 F.Supp. 2d 988, 1015 (S.D. Ohio 2003); *Yunger v. Hamilton Cnty., Ohio*, No. 1:12cv00251, 2012 U.S. Dist. LEXIS 182141, 2012 WL 6725590 at *1 (S.D. Ohio Dec. 27, 2012); *Johnson v. City of Englewood*, No. 3:11cv00366, 2011 U.S. Dist. LEXIS 138219 (S.D. Ohio Dec. 1, 2011); *Winston v. Cnty. of Franklin*, No. 2:10cv1005, 2011 U.S. Dist. LEXIS 70078, 2011 WL 2601562 at *4 (S.D. Ohio June 30, 2011); *Koch v. Cnty. of Franklin, Ohio*, No. 2:08cv1127, 2010 U.S. Dist. LEXIS 57367, 2010 WL 2386352 at *9 (S.D. Ohio June 10, 2010)) (dismissing unchartered counties from § 1983 cases as not sui juris).

Admittedly, insofar as the Plaintiff's *Monell* claim under § 1983 is concerned, some district judges of the Sixth Circuit have reached the opposite conclusion and reasoned that *Monell* creates an "exception" to the requirement that a plaintiff must name a party capable of being sued. *E.g., Bruce v. City of Miamisburg*, No. 3:21-cv-00080, 2021 U.S. LEXIS

187831, *5 (S.D. Ohio Sept. 30, 2021) (citations omitted). This approach is not persuasive. The Sixth Circuit recently affirmed dismissal of a plaintiff's *Monell* claim against a "sheriff's office" for failure to name a suable party. *Berry v. Delaware Cty. Sheriff's Office*, 796 Fed. App'x 857, 860 (6th Cir. 2019). The court recognized no *Monell* "exception" to the general rule that a plaintiff must seek relief from a party capable of being sued. *Id.*

The purported exception to suability in *Monell* claims crucially overlooks an essential element of any *Monell* claim, causation. *Monell* granted certiorari on the question of "[w]hether local governmental officials and/or local independent school boards are 'persons' within the meaning of 42 U. S. C. § 1983 when equitable relief in the nature of back pay is sought against them in their official capacities." *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 662 (1978). The Court held that a government official in their official capacity or other local government body may be liable for the deprivation of a plaintiff's civil rights that *results* from the execution of that entity's policy or custom. *Id.* at 694. An Ohio county that merely exists as a "'territorial division of the state for purposes of political organization and civil administration'" does not make or enforce public policies and cannot be held accountable by its constituents for alleged civil rights violations. *Estate of Fleenor*, 2022-Ohio-3581 at ¶ 8 (quoting *State ex rel. Alexander v. Summit Cty.*, 17 Ohio Dec. 451, 456 (1906)). Such an entity, to the extent it is one, cannot cause or be held accountable for alleged civil rights violations.

However, a board of county commissioners or an elected county official, sued in their official capacity, does represent a political body, makes and enforces policies, and may be held accountable by their constituents. *McGuire*, 253 F. Supp.2d 988, 1015 (S.D. Ohio 2003) ("counties, as political entities, are not *sui juris*; they are held accountable through their elected representatives, to wit, their commissioners"). The mere allegation of a *Monell* claim does not render an unchartered Ohio county *sui juris* when a plaintiff can and should name the party who can answer for the alleged unconstitutional governmental conduct.

Defendant BCC—or an official such as the Montgomery County Sheriff in his official capacity—may be proper parties to a suit alleging liability against an Ohio political subdivision. Montgomery County itself, though, may never be a proper party in such a suit because it is not sui juris. The Plaintiff's claims against Montgomery County must be dismissed.

**B.    The Plaintiff's *Monell* claim must be dismissed as to the BCC because it was brought outside the applicable statute of limitations.**

A complaint may be dismissed under Fed. R. Civ. P. 12(b)(6) when it affirmatively alleges facts establishing the plaintiff did not sue within the applicable statute of limitations. *Coleman v. Hamilton Cty. Bd. of Cty. Comm'rs*, 130 F.4th 593, 607 (6th Cir. 2025). Section 1983 claims arising in Ohio must comply with the State's general personal injury

10

statute of limitations, which requires filing such actions within two years of their accrual. *Browning v. Pendleton*, 869 F.2d 989, 991–92 (6th Cir. 1989).

The accrual date of Plaintiff's *Monell* claim is a question of federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Though the Sixth Circuit has not squarely addressed the rule governing the accrual date of a *Monell* claim, "the general consensus of district courts within [the Sixth Circuit]" is that the cause of action accrues when the plaintiff knows (or reasonably should know) their injury. *Waseleski v. City of Brooklyn*, 1:23-cv-00548, 2024 U.S. Dist. LEXIS 74183 (Apr. 24, 2024 S.D. Ohio 2024) (adopting and quoting the rationale of *Boyer v. Clinton Cty. Sheriff's Off.*, 645 F. Supp.3d 814, 823 (S.D. Ohio 2022)).

As the BCC was not named as a defendant until Plaintiff brought the Amended Complaint, it is necessary to determine whether Amended Complaint was effective against the BCC the date it was filed or whether it "relates back" to the original complaint. Doc. 1, PAGEID # 4–5; Doc. 7, PAGEID # 63–65. The general rule provided by Fed. R. Civ. P. 15 is that an amended complaint that adds a new party "'creates a new cause of action and there is no relation back to the original filing for purposes of limitations.'" *Zakora v. Chrisman (In re Estate of Zakora)*, 44 F.4th 452, 480 (6th Cir. 2022) (quoting *Asher v. Unarco Material Handling, Inc.*, 596 F.3d 313, 318 (6th Cir. 2010)).

To relate the claims of an amended complaint against a newly added party back to the date of the original complaint, Rule 15 requires, in relevant part, that the new party knew or should have known the action would have been brought against it, but for a

mistake concerning its identity. Fed. R. Civ. P. 15(c)(1)(C)(ii). Not knowing whom to sue or opting not to discover a defendant's identity within the statute of limitations period is insufficient to establish the type of "mistake" required by Rule 15. *Zakora*, 44 F.4th at 482 (quoting *Smith v. City of Akron*¸ 476 F. App'x 67, 69 (6th Cir. 2012)).

Nothing in the Amended Complaint reveals the BCC was added to the Plaintiff's *Monell* claims because the Plaintiff mistook its identity in initiating this civil action. Doc. 7. To the contrary, the BCC was added, not substituted, as a party in the matter. The Amended Complaint unquestionably indicates the Plaintiff cannot invoke Fed. R. Civ. P. 15 to relate back the claims against BCC to date of his original. The effective date of the claims against the BCC is the date of the Amended Complaint, April 16, 2025.

Turning to date the Plaintiff's *Monell* claim, it is evident the injury underlying the claim is the alleged unconstitutional denial of medical care to Isaiah Trammell during his incarceration at the Jail on March 13, 2023. Doc. 7, PAGEID # 67–78, 100–102. As described in the Amended Complaint, Trammell inflicted grievous harm to himself on March 13, 2023. Any § 1983 claim related to this injury unquestionably accrued on March 13, 2023.

Based on these principles, the Plaintiff had until March 13, 2025, to bring § 1983 claims related to the alleged injury in this civil action. The Amended Complaint unambiguously indicates that the Plaintiff did not bring his *Monell* claim against the BCC until April 16, 2025—after the two-year deadline to bring suit had lapsed. The Plaintiff's

12

*Monell* claim against the BCC was brought outside the applicable statute of limitations.

This claim against the BCC must be dismissed.

**C.**    **Plaintiff's *Monell*, survivorship, and wrongful death claims fail to state a claim upon which relief can be granted against Montgomery County or the BCC because as a matter of law, neither party exercises any control over the jail.**

The gist of the Plaintiff's *Monell* and state survivorship and wrongful death claims is that the alleged wrongful conduct of Montgomery County and the BCC, through their policies or practices *at the Jail*, caused Trammell's death. Doc. 7, PAGEID #99–102. As discussed above, Montgomery County is incapable of acting at all because it is a mere territorial subdivision of the State.

With respect to the BCC, Ohio law unambiguously indicates that as a matter of law, a board of county commissioners has no authority over a county jail; operating a jail is the exclusive province of the county sheriff:

> "Under Ohio law, the sheriff is in charge of the county jail and all persons confined therein. Ohio Rev. Code Ann. § 341.01 (Baldwin 2008). The sheriff "shall keep such persons safely, attend to the jail, and govern and regulate the jail according to the minimum standards for jails in Ohio promulgated by the department of rehabilitation and correction." *Id*. The county commissioners have no duty to control the sheriff in keeping a jail safe, and the fact that Ohio Rev. Code § 307.01(A) designates the board of county commissioners as the agency to determine the necessity of jail construction does not mean that such board has any control over the operation of a county jail."

13

*Koch v. Franklin County*, No. 2:08-cv-1127, 2010 U.S. Dist. LEXIS 57367, *25–26 (S.D. Ohio June 10, 2010) (quoting *Brown v. Voorhies*, No. 2008 U.S. Dist. LEXIS 45778, *4–5 (S.D. Ohio June 10, 2008)) (citation omitted). "Case law from and within the Sixth Circuit overwhelmingly supports the conclusion that Ohio law does not grant [a board of county commissioners] authority over [a county jail]—in particular, the powers to set policy governing the operation of the [jail] or the training of their personnel." *Hunter v. Hamilton Cty. Bd. of Comm'rs*, No. 1:21-cv-544, 2022 U.S. Dist. LEXIS 250311, *8–21 (S.D. Ohio June 15, 2022) (collecting cases regarding the absence of authority of an Ohio board of county commissioners over matters under the purview of a county sheriff, including jail operations), *adopted in its entirety in* 2024 U.S. Dist. LEXIS 59163 (S.D. Ohio Mar. 29, 2024). *See also, Armstead v. Baldwin*, No. 2:19-cv-4857, 2019 U.S. Dist. LEXIS 217374, *4–5 (S.D. Ohio Dec. 18, 2019) (denying proposed amendment to add board of county commissioners because is it not responsible for operation of county correctional centers).

Nonetheless, the Court has previously split on the issue. *Swink v. Montgomery Cty. Bd. of Comm'rs*, No. 3:16-cv-392, 2017 U.S. Dist. LEXIS 132637, *11–16 (S.D. Ohio Aug. 18, 2017) (overruling motion on judgment on the pleadings that BCC was not liable for *Monell* claims at the Jail as a matter of law). In *Swink*, the Court reasoned that "to hold that the [BCC] could not be liable for any unconstitutional policies implemented at the Jail would have the practical effect of eliminating Montgomery County's potential liability *Monell*." *Id.* at *15.

14

Respectfully, concern about potential evasion of *Monell* liability for the Jail's operations is misplaced. A claim regarding conditions at a county jail should lie against the party with the authority over those conditions and power to redress them—the county sheriff. Naming a county sheriff in their official capacity is the most simple and direct way to pursue such a claim, not naming a board of county commissioners. *See Petty v. Franklin Cty.*, 478 F.3d 341, 347 (6th Cir. 2007) (concluding an Ohio sheriff is a proper legal entity for § 1983 claims); *Lambert v. Clancy*, 2010-Ohio-1483 at ¶ 22 (concluding that an officeholder of an Ohio political subdivision sued in their official capacity is equivalent to suing the officeholder's political subdivision).

Plaintiff's claims against Montgomery County and the BCC regarding the death of Trammell due to alleged wrongful acts at the Jail must fail. As matter of law, neither Defendant had any authority over the policies or operations of the Jail, which fall under the exclusive jurisdiction of the Montgomery County Sheriff. Plaintiff failed to name the proper party in these claims. These claims must be dismissed as to Montgomery County and the BCC.

**D.      Plaintiff's survivorship and wrongful death claims fail to state a claim upon which relief can be granted against Montgomery County or the BCC because the Amended Complaint fails to establish any exemption to their general immunity from liability provided by Ohio law.**

Plaintiff's survivorship and wrongful death claims implicate Ohio's political subdivision immunity statutes which provide civil immunity to political subdivisions.

Montgomery County and the BCC are both political subdivisions subject to these statutory provisions. R.C. 2744.01(F). *See also Kennerly v. Montgomery Cty. Bd. of Comm'rs*, 2004-Ohio-4258, ¶ 8 (noting the BCC is a political subdivision). Generally, "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." R.C. 2744.02(A)(1).

Plaintiff's claims alleging unconstitutional policies or practices at the Jail are directed squarely at the Jail's operations.  Doc. 7, PAGEID #99–102. Governmental functions include "the operation of jails." R.C. 2744.01(C)(2)(h). As Plaintiff brings his claim predicated on Trammell's injury and death that allegedly resulted from the Defendants' unlawful operation of the Jail, the general immunity rule applies.[2]

Ohio law does recognize exceptions to the general immunity rule. These exceptions include, but are not limited to, claims involving the negligent operation of a motor vehicle or any other provision of Ohio law that expressly provides liability. *See* R.C. 2744.02(B) (setting forth the statutory exceptions to immunity). However, the Amended Complaint reveals no basis to conclude any of the statutory exceptions of R.C. 2744.02(B) apply. Doc. 7. Nor does applicable state case law suggest a statutory

---

[2] As argued above, Montgomery County and the BCC do not concede that they control or operate the Jail.

exception could apply. On similar survivorship and wrongful death claims alleging Franklin County was deliberately indifferent to an inmate's suicide risk during the inmate's incarceration ats county jail, the Tenth District Court of Appeals of Ohio concluded no statutory exception applied, and the county was immune under R.C. 2744.02(A). *Hiles v. Franklin Cty. Bd. of Comm'rs*, 2006-Ohio-16, ¶ 33–36 (10th Dist.).

In accordance with the general grant of immunity of R.C. 2744.02(A) and in the absence of any applicable statutory exception, neither Montgomery County nor the BCC may be liable in damages for injury or death related to the operation of the Jail. Plaintiff's survivorship and wrongful death claims against these defendants must be dismissed.

## CONCLUSION

Based on the foregoing, the Plaintiff's First Amended Complaint fails to state a claim upon which relief can be granted against Montgomery County or the Montgomery County Board of County Commissioners. The Amended Complaint should be dismissed with prejudice against these defendants.

Respectfully submitted,

MATHIAS H. HECK, JR.
PROSECUTING ATTORNEY

By: */s/ Joshua T. Shaw*
    Ward C. Barrentine (0074366)
    Joshua T. Shaw (0087456)
    Collin B. Showe (0093805)
    Assistant Prosecuting Attorneys
    301 West Third Street
    P.O. Box 972

Dayton, Ohio 45422
Telephone: (937) 225-5654
Fax Number: (937) 225-4822
E-mail:   barrentinw@mcohio.org
           shawj@mcohio.org
           showec@mcohio.org

Counsel for Defendants Montgomery
County and the Montgomery County Board
of County Commissioners

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 22, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties in this case registered with the CM/ECF system, or, if they are not registered users, by mailing a copy via certified United States mail.

By: <u>*/s/ Joshua T. Shaw*</u>
Joshua T. Shaw (0087456)
Assistant Prosecuting Attorney